BUSTER *v.* MANN.

Opinion delivered April 7, 1900.

1. APPEAL IN CHANCERY—BILL OF EXCEPTIONS.—On appeal from a decree in chancery, evidence taken orally before the chancellor and preserved by a bill of exceptions that was not examined by appellees' counsel will not be rejected because of appellants' agreement that such evidence should be reduced to writing and submitted to appellees' counsel, and that, after being agreed to, it should be signed by the judge, if appellees' counsel was absent and could not be reached, and there was no other way of preserving the evidence. (Page 26.)

2. RECEIVER'S SETTLEMENT—PRACTICE.—On appeal from a decree over-ruling exceptions to a receiver's report of the sale of a sawmill and of a lot of timber, it was not error to refuse to charge one of the creditors with the difference between the price of lumber sold and the price such creditor had agreed to pay for it, no such question being presented by the pleadings. (Page 26.)

3. RECEIVERSHIP—PREFERRED DEBTS. A receiver who has advanced money to pay the expenses of the receivership will not be entitled to any preference over the creditors who have advanced money for the same purpose. (Page 27.)

4. SAME.—One employed by a receiver operating a sawmill as his assistant, not being a laborer, has no lien on the lumber manufac-tured, and is entitled to no preference over other creditors of the receiver. (Page 28.)

5. SAME.—Where a creditor holding a mortgage on a sawmill con-sented to the appointment of a receiver thereof, and to the operation of the mill by the receiver, such debts as were incurred by the receiver in the operation of the mill will take precedence over the mortgage debt. (Page 28.)

Appeal from Cleveland Circuit Court in Chancery.

MARCUS L. HAWKINS, Judge.

STATEMENT BY THE COURT.

E. W. Farrar, being the owner of saw and planing mills and land upon which they were located and other property used in operating the mill, gave to Mann, Moon & Company a mortgage up-on the whole property to secure a debt of about $8,000. Farrar was also indebted to other persons, and on the 3d day of October, 1895, he made a general assignment, conveying to W. J. Bunn, as assignee, all his property, both real and personal, for the benefit of his creditors. The assignee took possession of the property, but the Dickinson Hardware Company and other unpreferred creditors brought suits against Farrar, and had attachments levied upon the property in the hands of the assignee. Thereupon J. E. Bry-ant and other preferred creditors commenced suit in equity against the Dickinson Hardware Company and the creditors who had at-tached, for the appointment of a receiver. They alleged that, in addition to the saw and planing mill plant, there was a large number of logs at the mill ready to be sawed, and that unless these logs were turned into lumber they would become damaged. For this and other reasons they asked for the appointment of a receiver

to take charge of the assets, with authority to operate the mills and convert the logs into lumber. The receiver was appointed, and directed to take charge of all the assets assigned, both real and personal, and to operate the mills and sell the lumber, the real estate being the land upon which the mills were situated. Mann, Moon & Company, whose debt, as before stated, was secured by a mortgage on the property, filed an intervening petition, and asked that their mortgage be foreclosed and the property sold. They also asked that a receiver be appointed to take possession of the property, to preserve and sell the same in such manner and on such terms as the court should direct. The receiver commenced to operate the mill, and soon afterwards, with the approval of the judge, made a contract with Mann, Moon & Company for the sale to them of the output of the mill.

In 1896, finding that, through fall in the price of lumber, the expense of operating the mill was greater than the profit, the receiver, at the request of Mann, Moon & Company, obtained an order for the sale of the land, mill, lumber and other property belonging to the mill plant. The property was sold, and the receiver afterwards filed his report, showing that the proceeds of the sale and other assets in his hands amounted to $5,263.94, while the receiver's debts incurred in operating the mill amounted to $8,721.64.

The appellant, E. R. Buster, a creditor of the receiver, came in and excepted to the report on several grounds, but his exceptions were overruled, the report confirmed, and a decree made distributing the assets. Buster appealed, and makes the following assignment of errors, to-wit: (1) The court erred in not charging up Mann, Moon & Company with the difference between their contract price for the lumber and the price it brought at the sale. (2) The court erred in allowing the receiver to pay W. S. Horton & Company in full without requiring Horton to take a *pro rata* with other creditors of the receiver. (3) The court erred in allowing the claim of Mann, Moon & Company for $1,705.69 against the receiver, and allowing it a *pro rata* out of the sale of the mill property. (4) The court erred in allowing the claim of R. K. Mann, a member of the firm of Mann, Moon & Company, for $143.49, and classing it as a labor claim, and preferring it to the claim of Buster. (5) The court erred in ordering the proceeds of the sale of the land to be paid by the receiver to Mann, Moon & Company on a

debt of Farrar to Mann, Moon & Company, when Buster, one of the various creditors, had not been paid in full.

*W. S. Amis,* for appellant.

The expenses incurred by a receiver with power to manage a business constitute liens on the property which take precedence over other obligations. Beach, Rec. § 307; 1 Wiltsie, Mortgage Foreclosures, 817.

*Hill & Auten,* for appellees.

The testimony of Buster and Bunn is not properly before this court. The record shows that the motion for new trial was not filed in time.

RIDDICK, J., (after stating the facts). This case comes before us on appeal from a decree overruling exceptions to a report of a receiver and distributing the assets in his hands. The questions arising on the exceptions were heard by the chancellor partly on evidence taken orally at the bar of the court, which was afterwards brought on record by a bill of exception. It is contended by appellee that this evidence should not be received, for it is said that it was taken orally under an agreement that it should be reduced to writing and submitted to the attorney for appellee, and, after being agreed to, should be signed by the judge, and treated as if taken in the form of depositions, and that this agreement was not complied with. The opposing side offer as an excuse for the failure to comply with the agreement that counsel of appellee, being absent, could not be reached, and their only means of preserving the evidence was by bill of exceptions. After considering the matter, we do not see that we would be justified in rejecting this evidence for the reasons given. In order to avoid such controversies, trial judges should always endeavor to give counsel for appellee the opportunity of inspecting the bill of exceptions before it is signed. About the material facts of the case before us there is, however, little dispute, and we will proceed to consider the different grounds of error assigned.

The first contention that the court erred in not charging Mann, Moon & Company with the difference between the price for which the lumber was sold by the receiver and that which they had contracted to pay for it must be overruled, for no such question was presented by the pleadings. We see no reason why Mann, Moon & Company should not have been compelled to comply with their

contract. They contracted to purchase the lumber manufactured by the receiver, and agreed that, upon termination of the contract by the court or judge, they would furnish orders for all stock on hand, and that, upon failure to furnish orders, they would, within sixty days from termination of the contract, pay full contract price for such lumber.    The market price of lumber declined until it was worth much less than the price named in the contract. Thereupon Mann, Moon & Company induced the receiver to procure an order from the court to dispose of the lumber and other property in his hands at public sale.    The receiver says that he obtained this order with the understanding with Mann, Moon & Company that the property would bring enough to pay the receiver's debts, and, as the balance would go to Mann, Moon & Company on their mortgage, he did not see that any one except that company was interested.    But, this being so, the property should not have been sold or ordered to be sold at a price less than that which Mann, Moon & Company had agreed to pay.    The contract between them and the receiver under which the mill had been operated was terminated by the order of the court, procured at the instance of Mann, Moon & Company, directing a sale of the property. If, when offered at public sale, no one offered to pay as much for the lumber as the contract price, the receiver should have held the lumber for Mann, Moon & Company, and demanded of them the contract price.    But he did not do this.    He sold the lumber for thirty-five hundred dollars less than the sum Mann, Moon & Company had agreed to pay for it. This sale was reported to the court, and approved without objection. The lumber thus passed into the hands of other parties, and no proceeding of any kind has been begun against Mann, Moon & Company to compel them to pay the loss sustained by their failure to purchase at the contract price.    This is not an action against Mann, Moon & Company, but a settlement of the receiver, and we do not see that the court had in this proceeding any right to give judgment against Mann, Moon & Company. Before such a judgment can be rendered, there must be a petition or complaint filed, with opportunity for them to appear and defend, but we express no opinion as to whether it is now too late to commence such a proceeding.    For the reasons stated, the first assignment of error can not be sustained.

The receiver had in his hands money which he held as assignee of W. S. Horton & Company.  He used a portion of this money to pay expenses of operating the mill.    The court allowed him

to deduct this sum from the funds in his hands arising from the sale of the property before paying anything to his other creditors. The contention is made that it was error in the court to allow the receiver this preference in the distribution of the fund. The receiver had, of course, no right to use the funds of Horton & Company in that way, and he afterwards repaid the money to that estate. This is not, therefore, the claim of Horton & Company. It is the claim of the receiver for money he has advanced to pay expenses. But Mann, Moon & Company also furnished him money to pay expenses of operating the mill, and the claim of the appellant, Buster, is for money and goods furnished for the same purpose. These parties, including the receiver, all acted under the belief that the assets were amply sufficient to pay all debts incurred in operating the mill. In this they were all mistaken, and we see no reason why one should be given a priority or preference over the others. It is, of course, true that the court should endeavor to protect its receiver for expenditures made in good faith and for the benefit of the property in his hands, but when his claim is of the same nature as those of other creditors, and the property is not sufficient to pay all, he is entitled to no preference.

The allowance for the service of R. K. Mann, who was employed by the receiver as an assistant, and which is the basis of the fourth assignment of error, was, we think, proper. But he was not a laborer, and had no lien upon the lumber manufactured, and was entitled to no preference over other creditors of the receiver.

The third and fifth assignments of error may be treated together. The claim of Mann, Moon & Company against the receiver, allowed by the court, consisted in part of money advanced by them to the receiver to pay current expenses. This portion of their claim stands, as before stated, on the same basis as the claim of appellant, Buster, and we need not discuss that further. The remainder of their claim was for timber cut by the receiver from the land of Farrar in his possession, and upon which Mann, Moon & Company held a mortgage. The claim that the value of this timber and the money arising from the sale of the land in the possession of the receiver should be applied first to the payment of the expenses of the receivership is resisted by Mann, Moon & Company, on the ground that the court had no power to set aside their mortgage lien upon the land in favor of expenses incurred by the receiver. We have no doubt that this contention would be sound if Mann,

Moon & Company had not consented to the appointment of the receiver, and to the operation of the mill by him. The order appointing the receiver directed that he take possession of all the assets of Farrar conveyed in the assignment, including mills, land upon which the mills were situated, and personal property.   It directed him to operate the mills, and sell the output in the usual course of business and pay the expenses out of any funds that might come into his hands by virtue of the receivership.   Mann, Moon & Company made no objection to this order, but on the contrary filed an intervention in which they also asked for the appointment of a receiver. They made a contract with the receiver by which they were to take the output of the mill, and expressly agreed in such contract not to press the foreclosure of their mortgage so long as the mill should pay expenses and one thousand dollars per month on their mortgage debt. One member of the firm was employed by the receiver to superintend and assist in operating the mill, and the mill was run, and these expenses incurred, under his direction and approval, until by his advice the mill was stopped, and an order procured to sell.   The only valid reason for operating the mill that we can discover was to saw up logs already on the yard, and which were likely to become damaged, but the contract of the receiver with Mann, Moon & Company seems to have been based on the idea that there were no limits to the receiver's powers in this respect, and that he was authorized to conduct a general saw mill business by buying timber and selling the manufactured product.   They had it in their power at all times, by the foreclosure of their mortgage, to have stopped the operation of the mill and the consequent expense.   The other creditors of Farrar seem to have soon reached the conclusion that the mortgage of Mann, Moon & Company with the expenses of the receivership would consume all the assets. They made no objection while the receiver operated the mill and incurred the expenses under the advice and direction of a member of the firm of Mann, Moon & Company. No doubt, Mann, Moon & Company expected that the mill would more than pay expenses, and so it would have  done had  they paid for the  lumber the price they agreed upon.   But the market price of lumber declined.   Mann, Moon & Company did not want it at the price they had agreed to pay, and it was sold at public sale for a small price, leaving the receiver heavily in debt to those who had furnished him money and supplies to operate the mill.   It clearly appears, we think, that Mann, Moon & Company not only asked for the appointment of the

receiver, but consented and encouraged him in the operation of the mill by which the debts were incurred. They were practical saw-mill men, and certainly did not suppose that a large sawmill plant could be operated without expense, and must have known that if the expenses exceeded the profits they would have to be paid out of the assets in the hands of the receiver, as the court had ordered. Under these circumstances, we think the debts of the receiver should be paid out of the assets in the hands of the receiver, before any-thing is paid on the debt of Mann, Moon & Company. In reach-ing this conclusion, we by no means approve of the order authorizing the operation of this mill. Courts are not required to operate saw-mills, and the disastrous consequences that resulted from the opera-tion of this mill by the receiver illustrates the evil and danger of such a proceeding. But the order was doubtless made because no one objected, and the creditor that consented has no right to complain at the expense thus necessarily entailed. We are, therefore, of the opinion that it is now too late for Mann, Moon & Company to object to the payment of these expenses incurred by the receiver with their consent and approval, and we hold that such expenses take prece-dence over their mortgage debt.

For the errors indicated, the judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.