GERMAN NATIONAL BANK *et al. v.* YOUNG, RECEIVER.

## Opinion delivered July 13, 1914.

1. RECEIVERS—CONDUCT OF BUSINESS—OBJECTIONS.—Where a receiver conducted a business at a loss, after the lapse of three years it is too late for an interested party to object to the final settlement and to seek to charge the receiver with the loss.

2. RECEIVERS—OPERATION OF BUSINESS—BORROWED MONEY.—A receiver who borrows money from several parties to operate the business must pay back all the claims for borrowed money used in the operation of the business, *pro rata.*

3. RECEIVERS—FEES—EARNINGS PRIOR TO THE RECEIVERSHIP.—Where one Y. was appointed receiver of an insolvent corporation, he will be entitled to a preference under Kirby's Digest, § 4057, for the amount due him for services rendered as an employee of the corporation before it was placed in the hands of a receiver.

4. RECEIVERS—FEES.—Where a fixed sum was agreed upon as a reasonable fee for the receiver of an insolvent corporation, the receiver will not be allowed to collect an additional commission upon the sale of the property of the corporation.

Appeal from Sebastian Chancery Court; *J. V. Bourland,* Chancellor; reversed.

STATEMENT BY THE COURT.

In April, 1909, the Hiawatha Smokeless Coal Company, operating a coal mine in Scott County, was by the chancery court on the application of some of its stockholders, the company being insolvent, placed in the hands of a receiver to be wound up and its assets distributed. The complaint prayed that the same be managed under the orders and direction of the court, and that the receiver be ordered to borrow as much money as was necessary to protect the property; and one June 21, R. A. Young was appointed receiver, and "was authorized to borrow money to meet the payroll then due at the mine and pay the necessary expenses of preserving the property, and, if, in his judgment, it was to the best interest of all parties, to operate the mine, employing union miners for that purpose."

The company was indebted at the time of his appointment in the sum of $26,208.54. He operated the mine about eight months during the three years of the receiv-

ership before the property was sold, and borrowed money to pay the expenses of the operation, $7,000 being borrowed from the German National Bank, which was the principal creditor at the time of his appointment. He mined and sold coal during the operation of the mine to the amount of $23,594.16. The mine property was sold for $25,839.22. The receiver's report on June 1, 1912, covering the period of the receivership, showing the moneys received and paid out, is as follows:

RECAPITULATION OF RECEIPTS.

| | |
|---|---|
| Loan from banks | $21,700.00 |
| Sales of coal | 23,594.16 |
| Sale of mine mules | 500.00 |
| Incidentals | 64.72 |
| | $45,658.88 |
| Sebastian County Bank | 77.86 |
| | $45,736.74 |

RECAPITULATION OF DISBURSEMENTS.

| | |
|---|---|
| R. A. Young (personal) | $ 2,034.65 |
| Seb. Co. Bank, Int. on O. D. | 134.89 |
| Taxes 1909, 1910, 1911 | 1,235.53 |
| Pay roll | 24,864.53 |
| Operating expenses, notes and interest | 17,460.05 |
| | $45,729.65 |

He later filed a supplementary report showing receipts, including the sale of the mine property, $25,839.22, and disbursements of $19,366.63, in which was an allowance of compensation to him as receiver of $4,000.00, and in which he claimed a commission of 15 per cent on the sale of the mine, amounting to $3,852.

Appellant excepted to the different reports on several grounds, some of which were sustained and the report was confirmed, and it appealed from the judgment of the court overruling certain exceptions, assigning as errors the following:

4. The court erred in not sustaining its objection to the item of $2,034.65, for which the receiver claimed credit as expenses when the money was used for his personal benefit.

5. In not charging the receiver with the amount lost in the operation of the mine.

6. In paying certain creditors in full, in effect giving their claims preference and discriminating against the bank.

8. In the allowance of the claim for extra compensation for salary of bookkeeper in the sum of $1,776.65.

9. In the allowance of claim of Young for services before his appointment as receiver.

12. For the allowance of commission for the sale of the property to the receiver in addition to the compensation already allowed and paid him.

*Hill, Brizzolara & Fitzhugh,* for appellant; *Moore, Smith & Moore,* of counsel.

*R. W. McFarlane* and *Read & McDonough* for appellee.

KIRBY, J., (after stating the facts). This appeal is from a decree overruling exceptions to a report of a receiver and ordering distribution of assets in his hands.

The first contention noted is the allowance of $2,034.65 to the receiver as expenses, which was in fact moneys used directly by the receiver as follows:

"December 21, 1909, a check for $1,700 used to pay off his personal note. Another check is on April 25, 1910, for the same purpose for $636.37. Another for $413.21. He purchased for himself one mule at the mine, agreeing to pay therefor $100, and from this amount, $2,849.58, it was considered that the Greenwood Coal Company's account for $814.93 should be deducted, leaving a balance of $2,034.65."

The receiver replied to the exception and stated that the items above were for advances made to him personally and contends that the money was drawn from the

funds on hand for his personal use, and that his account showed that was part of his fees, and was not claimed as expenses of the receivership. It is also claimed that the amount having been allowed by the court in its approval of the receiver's report of June 10, 1912, and not appealed from is *res judicata,* and can not be re-examined. These items show on such reports as were filed charged "R. A. Young, personal." It is true, most of the parties interested understood, when agreeing that the receiver's compensation should be fixed at $4,000, that the said $2,-034.65 had been used as expenses in the administration of the estate by the receiver, when, in fact, it was used as stated above, for the receiver's personal benefit, and he claimed that in the agreement for the allowance of his compensation, it was understood that he should have the $4,000 in addition to said sum. The court, however, is of the opinion that the preponderance of the testimony shows it was the intention and agreement to allow only $4,000 to the receiver for his entire services, and that that sum is a reasonable compensation therefor. He was receiver for several other concerns during the time of this receivership, was superintendent for another coal mining company during the whole period at a salary of $150 per month, and during no part of the period did he devote his whole time to the business of this receivership. The decision approving the allowance of the item $2,034.65, not having been appealed from after the allowance and confirmation of the report, can not now be re-examined, it is true, but we are of the opinion that equity, good conscience and justice require that the $4,000 allowed as compensation for the receiver must be reduced by said amount of $2,034.65, already paid him, and that the court erred in not so reducing it and making a final allowance of an amount sufficient with it to make the $4,000 compensation in all.

(1) The receiver was given authority, if, in his judgment, he thought it to the best interest of the estate, to operate the coal mine, and proceeded to do so. It was shown that he was a capable and skilled superintendent

or mine operator, and that he had operated the mine under adverse conditions, and in a reasonably careful and economical way, and that the loss was due more to bad labor conditions and dull times, in not being able to dispose of the product to advantage, than to any fault of the receiver, and we do not think the court erred in refusing to charge him with the amount lost in the operation of the mine. It was the duty of those interested, and they should have kept closely in touch with the receiver's proceedings, and have objected to the further operation of the mine, and had it discontinued if they did not think it would result to their benefit. They will not be heard now on the final settlement of the receivership of three years to complain that the mine was operated at a loss, and that the receiver, who seemed to have been given, and to have exercised a free hand in its operation, shall be charged with the amount of the loss. *Buster* v. *Mann*, 69 Ark. 23.

(2) There is no need to sustain the sixth assignment. It appears that certain small amounts were paid to certain of the creditors of the company, but an examination shows that these amounts were for preferred claims, to the payment of which appellant only had the right to object that they should not have been paid until after it had received all the money it loaned the receiver with which to operate the mine. He should not have paid off all the other indebtedness in full incurred by him for money borrowed for operating the mine, and only about 70 per cent of the amount borrowed from the German National Bank during the receivership, but should have paid the claims for borrowed money used in the operation of the plant *pro rata*, if there was not enough to pay it all, and will be directed to pay said bank first, and at once out of the money in his hands the balance due upon its claim for money loaned him as receiver before any other disbursement or distribution is made.

The eighth assignment is sustained. The claim for extra compensation for the bookkeeper should not have been allowed. The reports show the amount of $15 al-

lowed monthly for a bookkeeper's services, and the receiver's supplementary report shows an amount claimed as extra compensation for a bookkeeper of $2,575.41. The testimony shows that no complete set of books was kept by the bookkeeper, who was shown to have been a competent one, that he was a cashier of a bank, and kept books also for the Greenwood Coal Company, and did this work as he himself said, "as a side line." The whole course of dealing shows that it was not contemplated that he should be paid more than $15 a month for the service, and the testimony shows that the service rendered was not worth more than that amount. The mine was only operated for about eight months during the whole three years for which he was paid $15 per month for keeping books. The whole claim for extra compensation should have been disallowed and the exception sustained, and the court erred in making the allowance of $1,776.65 on this claim.

(3) With regard to assignment No. 9, we will not disturb the court's ruling. Young was a capable mining man and superintendent, was engaged at the mine for two months before it went into the hands of the receiver, and as an employee, his claim was entitled to preference under section 4057, of Kirby's Digest, and the amount of $150 per month was agreed upon, and not unreasonable for the service rendered.

(4) Assignment No. 12 is also sustained. The court erred in allowing the receiver the commission of $1,540.80 upon the sale of the property. Four thousand dollars had been agreed upon as a reasonable sum and allowed as compensation for his services as receiver, and the evidence shows that that was a reasonable amount for all services rendered by him, and the court erred in making any further allowance, and he must be charged again with the $1,540.80 so erroneously allowed.

He will be charged and must account for the item of $2,034.65, as decided under the fourth assignment, with $1,776.65, amount erroneously allowed for extra compensation to the bookkeeper, as decided under the eighth as-

signment, and with the $1,540.80 erroneously allowed for commissions upon the sale of the property, as decided under assignment 12—in all with the sum of $5,352.10 additional.

For the errors indicated, the judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.