KING *v.* STERNBERG.

Opinion delivered July 9, 1928.

*Dobbs & Young,* for appellant.
*Clinton R. Berry,* for appellee.

SMITH, J.   N. R. Clark brought suit in the Johnson Chancery Court against C. E. Rogers, and alleged that the defendant was indebted to him in the sum of $2,600, that appellant owned a stock of goods worth less than $12,000, and that he owed other creditors $16,000, and was insolvent.

On September 17, 1926, plaintiff and defendant, by their respective attorneys, appeared before the chancellor in vacation, who made an order in which it was recited that Luther King was appointed receiver to take charge of defendant's stock of goods and fixtures, and the receiver was directed to make an inventory and to prepare and report to the court a list of defendant's creditors.

On September 29, 1926, the receiver reported that he had made the inventory, and the stock of goods invoiced $10,354.39, the fixtures $1,010, and the accounts approximated $4,000. The receiver further reported that "he has an offer to purchase said stock of goods and fixtures at 62½ cents on the dollar, in case the sale can be made at once, and that said offer is a fair price for said stock of goods and fixtures." The report recited that D. A. Blackburn was the proposed purchaser.

Upon the consideration of this report the chancellor ordered that the receiver make the sale of the stock of goods and fixtures at 62½ per cent. of the invoice price, and to put the purchaser in possession thereof, and to report his action under the order.

On the day this order was made, the receiver and Blackburn, who were partners under the firm name and style of King & Company, took possession of the stock of goods and fixtures, and began to sell the goods for cash or on credit, as they pleased.

On October 15, 1926, Rogers was adjudged a bankrupt by the United States District Court for the Western District of Arkansas, and Henry Sternberg was named as trustee, and on February 21, 1927, the trustee filed an intervention in the cause in which the receiver had been appointed, alleging the orders of the chancellor herein recited, and praying judgment against King for the invoice price of the stock of goods and fixtures. There was a prayer that King be required to file his final report, and that he pay into court the sum of $7,101.74, this being the sum at which the receiver had reported the sale could be made.

A demurrer was interposed to this intervention, which the court overruled, and King thereupon filed a response, which contained the following recitals: That he and Blackburn were in negotiation with Rogers for the purchase of the stock of merchandise, and it was discovered that, as Rogers had numerous creditors, compliance with the Bulk Sales Law would entail considerable delay, and it was then agreed that Clark, as a creditor,

should bring a suit which would confer jurisdiction on the chancery court to appoint a receiver and order the sale of the goods and fixtures, but that King should act as receiver only for such length of time as was required to make an inventory, when he was to be removed as receiver and another person appointed as his successor.

The response further alleged that, in accordance with this understanding, suit was brought by Clark as a creditor, and, pursuant to the appointment of King as receiver, he made the inventory under the mistaken belief that his appointment was valid, and "with the assurance that, when he made the inventory, the chancellor would appoint another receiver." In compliance with the agreement under which the suit was brought, King made the inventory, and, after doing so, was advised that his appointment was void, and that he and his partner, Blackburn, would not obtain title to the goods under the order of sale made by the chancellor in vacation and Blackburn thereupon refused to pay any part of the purchase price. King, at the instance of certain creditors, kept the store open and sold goods, keeping an account thereof. After the appointment of the trustee in bankruptcy, King offered to surrender to him the stock of goods and to account for the goods sold, but the trustee refused to accept this offer. It was alleged that the goods were not worth more than forty per cent. of the wholesale price. King denied that he was a purchaser of the goods, and prayed that he be held liable only as a trustee for the use of the general creditors.

On October 18, 1926, King filed a report of his receivership, showing that the goods and fixtures on hand amounted to $6,391.96, and that he had proceeds of sales amounting to $3,107.77. The receiver reported that he expended in taking care of the goods and in making the inventory the sum of $232.50.

The trustee in bankruptcy filed exceptions to the report of the receiver, and alleged that King was indebted to the estate of the bankrupt in the sum of $7,102.74, with interest thereon from September 29, the date on which

the chancellor ordered the goods turned over to the purchaser. The trustee in bankruptcy objected also to the allowance of any compensation to King for his own services, and prayed the court to allow a fee to compensate the trustee's attorney for services in this litigation.

The court found, on the final submission, that King, as receiver, was himself the purchaser of the stock of goods and the fixtures, and had been in continuous possession of the property, selling such of it as he could and adding to the stock by additional purchases, and that he should account for the purchase price, to-wit, $7,102.74. The court further found that King should be allowed $232.50, and that he should be charged interest from December 22, 1926, the date of the demand by the trustee in bankruptcy for the proceeds of the sale. The court refused to allow a fee to the attorney for the trustee in bankruptcy.

From this decree King has appealed, and the trustee in bankruptcy has prayed a cross-appeal.

For the reversal of this decree appellant insists: (1) that the proceeding in the chancery court was wholly void, and he should be held liable only as trustee, and not as a purchaser; (2) if the proceedings were not wholly void, there was no sale, and he should not be held as a purchaser; (3) that he acted in good faith at all times, and held the goods as trustee for Rogers until the appointment of the trustee in bankruptcy, and that the offer to purchase which was submitted to the court was upon condition that the purchaser acquire a good title to the property sold, and that, as he did not acquire such title, he should be permitted to return the unsold goods and to account for those sold at their invoice, or the price at which he had sold them.

It may be said that appellant offered to introduce testimony on the final hearing of this cause to the effect that he acted in entire good faith in the matter, and that the chancellor was fully apprised of all the facts in the case before any order of any kind was made, and that the

goods had deteriorated and depreciated in value; but the court refused to consider any of this testimony.

We think it unnecessary to consider any of the arguments advanced by counsel for appellant in support of the theories above stated, and it may be conceded that the effect of the excluded testimony was that appellant had acted in good faith throughout the matter, and that the goods now on hand and unsold are not worth their invoice price.

If it be conceded that the orders of the chancellor made in vacation were void and that appellant's appointment as receiver was unauthorized, appellant is still liable. A receiver improperly appointed may be required to account for assets which came into his hands by virtue of his appointment, and such is the effect of the decree of the court from which this appeal comes.

The trustee in bankruptcy did not attack the sale to appellant. He accepted as correct the inventory made by appellant himself and appellant's own estimate and report as to value, and asked only that appellant be required to account to him for this value.

There was a sale by appellant as receiver to a copartnership of which he was a member. This sale was made without notice of any kind to the general creditors, and without advertisement, and upon representations to the chancellor that it could not be made at all unless made at once. There was no condition in the receiver's report or the chancellor's order that the sale should be dependent upon its validity. It was an absolute sale, although unauthorized, and we see no inequity in holding appellant to his bargain and in requiring him to settle in accordance with its terms.

The goods were converted to appellant's own use, and he has sold a considerable portion of them, and his liability for their value cannot be affected by his good faith. The court did not err in refusing to consider testimony tending to show a depreciation in the value of the goods, as appellant was liable for the value of the goods at the time of their conversion, and this liabil-

ity cannot be reduced by their subsequent depreciation. Appellant fixed the value of the goods at 62½ per cent. of their invoice price, and reported a purchaser at that price, and there can be no injustice in requiring him to account for them at that value.

Certain questions are raised upon the cross-appeal which must be considered. One of these is the allowance to appellant for his services in making the inventory and appraisement. We think this allowance should not have been made. The order of the chancellor appointing appellant receiver provided that he should be appointed receiver "with the express stipulation, however, that there is to be no costs incident to such receivership," and that the receiver should serve as such "without fee or commission to himself." It may be further said that the services of appellant in making the inventory appear to have been rendered, not for the benefit of the general creditors, but to enable him to determine what price he could afford to pay.

The court charged interest on the value of the goods from the date of the demand of the trustee in bankruptcy for the purchase money, and on the cross-appeal it is insisted that the interest should have been charged from the date appellant took possession of the goods and fixtures; and we think this contention is also correct. The rule is that one who converts another's property is liable for its value from the date of the conversion. *Hudson* v. *Burton,* 158 Ark. 619, 250 S. W. 898; *Lipscomb* v. *Delong,* 158 Ark. 24, 249 S. W. 14; *Newburger Cotton Co.* v. *Stevens,* 167 Ark. 262, 267 S. W. 777; 140 A. L. R. 1279.

It is further insisted on the cross-appeal that the court should have made an allowance of a fee to the attorney for the trustee in bankruptcy, and that it was error to refuse to do so. We think, however, that the court was correct in this ruling, as this is a matter which will no doubt be properly taken care of when the trustee in bankruptcy makes his final report.

The decree is therefore affirmed on the direct appeal and reversed on the cross-appeal in the respects indicated.