TOWNSEND *v.* CAPLE.

4-4453

Opinion delivered December 7, 1936.

*Young, Elms & Macom,* for appellant.
*George E. Pike,* for appellee.

McHANEY, J. Appellee sued appellants C. J. and C. O. Guy in the justice of the peace court for $194.12, which he claimed the Guys owed him as a balance of an account for labor performed by him for them during the years 1934 and 1935, as sawyer and mechanic at their sawmill. His action against appellant Townsend was based on the fact that appellant had purchased from the Guys certain lumber which had been sawed by appellee while working for the Guys as sawyer, and on which he claimed a laborer's lien. A writ of attachment was sued out and levied upon certain cotton wood lumber in the hands of appellant and on his lumber yard. Trial in the justice of the peace court resulted in a judgment in appellee's favor against appellant and the Guys for the amount of the debt and the attachment on 85,000 feet of lumber was sustained, and it was ordered sold for satisfaction of the judgment and costs.

An appeal was taken from the judgment of the justice of the peace to the circuit court where, upon a trial *de novo* to a jury, a verdict and judgment were rendered against the Guys in the sum of $194, and against appellant in the sum of $92.12, and the attachment lien upon the lumber was sustained. Appellant alone has appealed to this court.

It is conceded that appellee was the sawyer and performed labor in the cutting of the 85,000 feet of lumber which was attached at the institution of this suit. It is insisted, however, that appellee is not entitled to a laborer's lien on said lumber because he was paid for all his labor in connection with the manufacture of said 85,000 feet of lumber, and that the attachment should have been dissolved. The facts are that appellant made an agreement with the Guys to manufacture into lumber

certain cotton wood timber. He furnished the money to pay for the stumpage and he furnished each week a sum sufficient to pay all of the laborers that did any work in connection with the manufacture thereof. He was buying the lumber from the Guys at $9 per 1,000, and made advances for the purposes above stated, and received and hauled away the lumber to his lumber yard in Stuttgart from time to time while same was being cut. Appellee himself testified that at the time he began work on the lumber attached in this action, the Guys were then indebted to him in the sum of $197, and that after he had finished cutting this same attached lumber, they were still indebted to him in the sum of $194.12. He testified that he was working for the Guys at the rate of thirty cents per hour, and that he worked on the lumber attached in this action 340 hours amounting to a total of $102, and that he had been paid during the time he had been at work on said lumber the sum of $99.60 which left a balance due of $2.40. The Guys admitted that they owed him the $2.40 and tendered that amount to him in open court which he refused to accept. There is no dispute in the evidence regarding this fact. His work on the attached lumber was done at intervals from August 24, 1935, to October 19, 1935. Appellee's claim against the Guys for $194.12 is likewise undisputed. The Guys admit that they owe him this amount of money, and they have not appealed from the judgment against them, but it is undisputed in this record that this claim was for work and labor done for the Guys prior to the work and labor done on the lumber purchased from the Guys by appellant for which he furnished the money for the stumpage and the manufacture of the logs into lumber. Appellee claims the right to apply the payments received by him each week during the manufacture of appellant's lumber to the old account under the rule of law frequently announced by this court that the debtor has the primary right to direct the application of payment by the creditor, and in the absence of direction by the debtor, the creditor may apply same to the oldest account or as he sees proper. We cannot agree with appellee in this contention because the rights of a third party were in-

volved and cannot be ignored. Appellant furnished the money to the Guys to pay appellee and the other laborers for the work and labor performed in the manufacture of this particular lumber. He did this for the very purpose of relieving it from any laborers' liens. Appellee knew that appellant was furnishing the money with which he was being paid, and, under such circumstances, the law is that appellee would not be permitted to make application of the payments made him for work on this lumber, to his old account even though the Guys had directed him to do so. Such was the situation in *Jordan* v. *Bank of Morrilton,* 168 Ark. 117, 269 S. W. 53, where it was contended that the right of appropriation of payments belongs exclusively to the debtor and creditor, and that no third person has any right to be heard for the purpose of compelling a different appropriation of payments from that agreed upon by them. In answer to this contention, the late Chief Justice HART, speaking for the court, said: ''There is a well-recognized exception to this rule, and that is, if the creditor had notice that money had been furnished his debtor upon an understanding that it was to be applied towards the payment of a particular debt, it could not be appropriated to the payment of another debt. Here, according to the finding of the chancellor, the bank lent the money to Turner with the express understanding that a specified part of it should be applied towards the payment of a debt of Turner to Jordan secured by a mortgage upon the same land which he had mortgaged to the bank. If Jordan had notice of these facts, he would not be permitted, even with the consent of Turner, to misapply it. *Harding* v. *Tifft,* 75 N. Y. 461. In short, if Jordan had notice that the bank had lent the money upon the understanding that a part of it should be applied towards the payment of his mortgage debt, he could not apply it to the payment of his unsecured debt as against the bank, even with the consent of Turner. In this connection, it may be stated that notice of facts and circumstances which would put a man of ordinary intelligence on inquiry is equivalent to knowledge of all the facts that a reasonably diligent inquiry would disclose. In other words, where a person

has sufficient information to put him on inquiry, he shall be deemed to know what the inquiry would disclose. *Bland* v. *Fleeman,* 58 Ark. 84, 23 S. W. 4; *Waller* v. *Dansby,* 145 Ark. 306, 224 S. W. 615; and *Krow & Neumann* v. *Barnard,* 152 Ark. 99, 238 S. W. 19.''

Appellee knew that appellant had purchased this lumber, and that he was hauling it away from time to time. He either knew or by the exercise of the slightest diligence could have known, that the money for his pay was being advanced by appellant from week to week during the time he was manufacturing same. Under the rule above announced, he could not appropriate payments received from the manufacture of this lumber to a former indebtedness owed him by the Guys even with their consent or at their direction. It is well settled that a sawyer at a mill has no lien on the lumber made therein, except for the specific lumber produced while his wages were unpaid. *Russell* v. *Painter,* 50 Ark. 244, 7 S. W. 35. It is also the rule that only those laborers who do work or who directly assist in producing a certain article are entitled to a lien for their labor. *Buster* v. *Mann,* 69 Ark. 23, 62 S. W. 588; *Klondike Lumber Co.* v. *Williams,* 71 Ark. 334, 75 S. W. 854.

The result of our views is that appellee was not entitled to a lien on the lumber attached in this action, and that the attachment should have been dissolved.

The judgment of the circuit court as to appellant is, therefore, reversed, and the cause dismissed.