4-6183 147 S. W. 2d 29

Opinion delivered February 3, 1941.

*Norton & Butler* and *Shane & Fendler,* for appellants.

*Charles Frierson, Jr.,* and *Chas. D. Frierson,* for appellee.

HOLT, J. J. F. Twist and Clarence C. Twist, brothers, were, until the death of Clarence C. Twist on April 1, 1938, engaged in large scale partnership farming operations in Crittenden and Cross counties, Arkansas.

Upon the death of Clarence Twist, the partnership having become heavily involved and burdened with debts, it was agreed between J. F. Twist, the surviving partner, and Edith G. Twist, the widow of Clarence Twist, Ira F. Twist and Giltner Twist, two of the four heirs of Clarence Twist, to apply to the Cross chancery court for a receiver to operate the partnership property. Accordingly, at the instance of the interested parties, including the creditors, W. M. Smith of Cross county was duly appointed receiver and served in this capacity until November, 1938, when he resigned after having made the 1938 crop.

Following Smith's resignation, as receiver, largely upon the recommendation of H. E. Patton of Greenwood, Mississippi, the secretary-manager of a discount corporation from which Twist Bros. had borrowed money for their operations, A. L. Gray of St. Louis, Missouri, was agreed upon to succeed Smith as receiver.

December 2, 1938, a contract, agreeing upon the employment of A. L. Gray, as receiver, was entered into at the office of J. L. Shaver, attorney, Wynne, Arkansas, subject to the approval of the chancery court. This contract was signed: "J. F. Twist, Individually and as Surviving Partner, Edith Twist, Giltner Twist, Ira F. Twist, A. L. Gray."

The provisions of this contract material here are:

"3. Whereas, the said J. F. Twist, individually, and as surviving partner, and Mrs. Edith Twist, the widow of the said Clarence C. Twist, and Ira Twist, and Giltner Twist, two of the four heirs of the said Clarence C. Twist, have agreed (subject to the approval of the court) for the continuation of the receivership through the year 1939, and for such further time as the court shall adjudge a receivership to be necessary, and

"4. Whereas, the said J. F. Twist, individually, and as surviving partner, and the said Edith Twist, Ira F. Twist and Giltner Twist, by their joint petition to the court, are recommending the present appointment of A. L. Gray to succeed W. M. Smith, as receiver, following the resignation of the said W. M. Smith, and the said

J. F. Twist, Edith Twist, Ira F. Twist, Giltner Twist, and A. L. Gray have agreed between themselves regarding the compensation of the said A. L. Gray, as receiver, as follows:

"5. Now, therefore, this writing witnesseth:

"Beginning with his qualification as receiver and through the year 1939, and for such length of time thereafter as the receivership shall be continued by order of court, the compensation of the said A. L. Gray, as receiver, shall be at the rate of six thousand ($6,000) dollars per year, payable out of the partnership assets in equal monthly installments, together with a suitable house at Twist, Arkansas, for himself and family, and the use of a partnership car for his duties as receiver and his reasonable expenses as receiver to be fixed from time to time by the court, provided, this agreement is subject to the approval of the court, and provided further the term hereof shall not exceed three years.

"6. If the receivership be terminated by order of court in a time less than three years from this date, and if the physical properties of the partnership in Cross county and Crittenden county, Arkansas, shall have been partitioned between the said J. F. Twist and the said widow and the heirs of Clarence C. Twist, according to their respective interests, that is to say $42\frac{1}{2}\%$ to J. F. Twist and $57\frac{1}{2}\%$ to the widow and heirs of Clarence C. Twist, then, for the unexpired portion of the said three-year period, the said A. L. Gray is hereby employed by the said widow and heirs of said Clarence C. Twist, as the general manager of whatever portion is allotted to them of the said Twist Brothers' property and his salary as such general manager shall be at the rate of five thousand ($5,000) dollars per year, payable in equal monthly installments, a suitable house on the Twist plantation, for himself and family, an automobile for his use as general manager, and a reasonable expense account to be agreed upon between the parties from time to time, his said employment by the widow and heirs of Clarence C. Twist being a private engagement between them in which J. F. Twist will have no concern or liability."

Following the execution of this contract, a petition was duly filed in the Cross chancery court asking the appointment of A. L. Gray, as receiver, in accordance with the terms of this contract. Upon presentation, the court appointed Gray receiver and thereafter on December 8, 1938, Gray qualified and took charge of the property as receiver.

In the order appointing Gray receiver in succession, we find this language: "The court doth find that the recommendation of the petitioners regarding the salary of the said receiver is fair and reasonable and is in keeping with his duties and responsibilities, and the same is by the court here now approved and put into effect, beginning with the date of the order as follows: The receiver's salary of $6,000 per year payable in equal monthly installments, a reasonable house on the partnership property for the receiver and his family, the use of a partnership car for his duties as receiver, and a suitable expense account as to which the receiver shall submit an estimate to this court. The receiver's compensation and perquisites are hereby fixed for the duration of this receivership, but not to exceed three years, subject, of course, to the lawful power of court to discharge the said receiver for cause, and subject to termination of the receivership, if and when the legal reasons therefor shall have been satisfied."

November 10, 1939, J. F. Twist, Edith Twist, Ira F. Twist, and Giltner Twist filed petition in the Cross chancery court seeking to terminate Gray's receivership, and authority to rent the lands involved for a period of years. A. L. Gray filed an intervention to this petition in which he alleged in substance that the Twists employed him on December 2, 1938, (under the contract set out, *supra*) which contract he embodied in and made a part of his intervention. This employment was subject to the approval of the court. After the contract was signed, the Twists went into court and got an order appointing A. L. Gray as receiver in succession to W. M. Smith. He qualified December 8, 1938. Under it he was to receive $6,000 per year, together with a suitable dwelling house at Twist, Arkansas. He was also to have the use of a

car and receive reasonable expenses as such receiver. The term of the employment was not to exceed three years and if the receivership was terminated by order of the court in less than three years and if the physical properties of the partnership had been partitioned, then the widow, Edith Twist, and the heirs of Clarence C. Twist agreed to employ him to manage their part of the property at a salary of $5,000 per year and to furnish the same items, including dwelling, car and expenses. He was to reside on the property at Twist and devote his full time to the work.

Gray further alleged he assumed the duties and managed the property with success. On November 8, 1939, he was notified that on November 10 the court would be asked that the receivership be terminated; that the property be placed under the control of J. F. Twist, the surviving partner, and Ira F. Twist as co-trustees; and that they be authorized to lease a large part of the plantation to the Farm Security Administration.

Gray further alleged that he accepted this position as receiver believing that his services would be needed for three years, either as manager of all the property, or of that portion to be awarded to Mrs. Edith Twist and her children; that he abandoned other regular employment to accept this position. By a device of trusteeship, the division of the property, that contingency by which it was contemplated that the receivership would terminate, is being avoided. The receivership is for the benefit, not only of these parties, but of the creditors; that it is for the best interest of the creditors that it continue. And his prayer was that the receivership be continued, or, in the alternative, that the parties compensate him for the breach of the contract.

Certain demurrers, motions to transfer to law and to quash depositions were overruled by the court. Answers were then filed by the Twists and a hearing was had before the court on April 17, 1940, at which all parties appeared in person or by attorneys. After the introduction and consideration of much testimony, the court made findings of fact in which he stated that notice was taken of the entire receivership, the condition of the properties

and the conduct of the Twist family; that when the property was first put into receivership, large sums of money were owed: $400,000 in real estate mortgages, $182,-047.74 to Staple Cotton Discount Corporation and $91,-834 in unsecured claims; that the receivership benefited the Twist family by paying off the debts except the real estate mortgages; that when Smith resigned, the parties suggested to the court the appointment of A. L. Gray, as receiver, and the amount of his compensation; that this suit is based on a contract of employment between A. L. Gray and the Twist family; that A. L. Gray is a highly competent man and rendered valuable and efficient services during the tenure of his receivership; and (quoting from the decree): ". . . disregarding the contract in its written words and taking into consideration the statements of Gray and his own firm announcement that he would not leave his work or terminate his previous connections for one year only; this, together with the fact that Gray's side contract with the family was not made known to this court until the filing of this intervention; all these things compel the court to find that A. L. Gray is entitled to additional compensation for his services as receiver which will be fixed at $6,000, plus $1,000 to be paid to his attorney because he has been compelled to institute this suit for his protection."

The order of the decree was that A. L. Gray, as receiver, recover from J. F. Twist, individually and as surviving partner, and Edith Twist, individually and as administratrix, and against Ira F. Twist and Giltner Twist, the sum of $7,000, $1,000 of which to go to A. L. Gray's attorney. From this decree comes this appeal.

This record reflects that appellee, A. L. Gray, acted as receiver in succession for the properties in question by order of the Cross chancery court from December 8, 1938, until the fall of 1939, a period of one year, when he was discharged by proper order of the court. For his one year's service he was paid $6,000 by appellants. At the time, however, the court made the order discharging Gray, he allowed him for his one year's service, in addition to the $6,000 paid to him by appellants, $7,000, $1,000 of which was to go to Gray's attorney.

The question for our determination is whether the chancellor erred in allowing this additional $7,000 to appellee under the facts as disclosed by this record.

Appellants earnestly insist that appellee's compensation is governed by the plain and unambiguous terms of the contract set out, *supra,* and that when the court discharged him after one year's service as receiver, the land not having been partitioned, he was entitled to be paid $6,000 only, the sum already paid to him, and that the court erred in allowing him $7,000 additional. It is our view that this contention must be sustained.

The contract set out, *supra,* on the question of Gray's employment, recites that the Twists have agreed among themselves "(subject to the approval of the court) for the continuation of the receivership through the year 1939, and for such further time as the court shall adjudge a receivership to be necessary."

Section 4 recites that the Twists are recommending to the court the appointment of Gray to succeed Smith.

Section 5 provides: "Beginning with his qualifications as receiver and through the year 1939, and for such length of time thereafter as the receivership shall be continued by order of court, the compensation of the said A. L. Gray, as receiver, shall be at the rate of $6,000 per year, . . . provided, this agreement is subject to the approval of the court, and provided further the term hereof shall not exceed three years."

Section 6 provides: "If the receivership be terminated by order of court in a time less than three years from this date, and if the physical properties of the partnership in Cross county and Crittenden county, Arkansas, shall have been partitioned between the said J. F. Twist and the said widow and heirs of Clarence C. Twist, . . . then, for the unexpired portion of the said three-year period, the said A. L. Gray is hereby employed by the said widow and heirs of said Clarence C. Twist . . ." at a salary of $5,000 per year.

We think it clear from these provisions of the contract that Gray was employed definitely for one year, but any longer period as receiver was contingent upon

the continuation of the receivership by the court and a partition of the lands in question. Since, as has been indicated, the court terminated the receivership at the end of the one-year period, and the lands were not partitioned, appellants were no longer obligated to pay appellee anything other than $6,000 for one year's services under the contract. We think there is no ambiguity in this contract and that it was improper to introduce parol testimony to explain the real nature of the contractual agreement.

This court said in *Stoops* v. *Bank of Brinkley*, 146 Ark. 127, 135, 225 S. W. 593: "Where the language is clearly susceptible of but one meaning, parol evidence to vary the terms of a written contract is not admissible. Where the meaning of the language of the contract is doubtful, or is susceptible of more than one meaning, parol evidence may be resorted to to show the real nature of the agreement. The admission of such testimony is, within the meaning of the terms employed in the written contract, to render certain that which is uncertain and to determine just what in fact the writing was intended to express." See, also, *Brown & Hackney* v. *Daubs*, 139 Ark. 53, 213 S. W. 4.

While it is true that Gray, as receiver, was an officer of the court and at all times subject to his control, and the court had the right to fix and award reasonable compensation for his services as receiver, the parties themselves had the right to agree in advance, subject to the court's approval, on the compensation to be paid the receiver for his services.

In the instant case the Twists and Gray did enter into a written contract, agreeing in advance upon Gray's compensation as receiver, and this contract was accepted and approved by the court, as appears in the decree appointing Gray receiver (part of which is set out, *supra*). Appellants, we think, have in every respect, complied with the plain terms of this contract.

On this record the court erred in enlarging Gray's compensation. As we have indicated, Gray was to have been paid $6,000 for his year's service and no more.

In *German National Bank, et al.,* v. *Young,* 114 Ark. 370, 169 S. W. 1178, this court held (quoting headnote No. 4): "Where a fixed sum was agreed upon as a reasonable fee for the receiver of an insolvent corporation, the receiver will not be allowed to collect an additional commission upon the sale of the property of the corporation." See, also, *King* v. *Sternberg,* 177 Ark. 970, 9 S. W. 2d 73.

In the case of *Ephraim* v. *Pacific Bank,* 136 Cal. 646, 69 Pac. 436, from the Supreme Court of California, it is said: "The defendants alleged affirmatively in their answer that the plaintiff importuned the Pacific Bank to have him appointed receiver, and that he promised and agreed with the said Pacific Bank that he would under no circumstances make any claim or charge against the bank for his services or expenses as such receiver, but would look solely to the crops and income from the lands placed in his possession for his compensation and expenses; that thereupon the said bank consented to his appointment upon the terms of said agreement, and the express condition that it should be under no liability for services or expenses to said receiver. The above agreement, if true, would constitute a complete defense on the part of these defendants."

On the whole case, for the error indicated, the decree is reversed, and the cause remanded with directions to enter a decree in accordance with this opinion.