TWIST *v.* TWIST.

4-9822                                    254 S. W. 2d 687

Opinion delivered January 26, 1953.

Rehearing denied March 2, 1953.

*J. W. Kirkpatrick* and *Norton & Norton,* for appellant.

*E. J. Butler,* for appellee.

ROBINSON, Justice. J. Frank Twist and C. C. Twist were partners in a large farming operation. They owned about 17,000 acres of land, of which approximately 10,000 acres were under cultivation. In 1938, when C. C. Twist died and a receiver was appointed to take charge of the property, the farm's indebtedness amounted to more than $600,000. Later, in 1939, J. Frank Twist, the surviving partner, and Ira F. Twist, son of the deceased partner, were appointed trustees. In 1942 J. Frank Twist died, leaving his estate to his widow, who was appointed to serve with Ira Twist as co-trustee. They were so successful in the operation of the business that in 1946 a great portion of all the partnership debts had been paid. They then leased between 2,000 and 3,000 acres to Bert Dickey and approximately 8,800 acres to Brawley and Spicer, who did business as St. Francis Planting Company. Included in the latter lease were 100 acres on which was situated the headquarters, consisting of a gin, store, dwelling houses, etc. These leases were for a period of five years, the last year covered by the lease being 1951.

In 1947 the two families, that is, the families of J. Frank Twist and C. C. Twist, agreed on a division of the property, the C. C. Twist family to get 57½ per cent of the land, and the J. Frank Twist family to get 42½ per cent. It was further agreed that the 100 acres, on which the headquarters was located, would not be divided at that time, and each family would refinance a loan on the part of the property received, so there would be no indebtedness against the headquarters property, which consisted of the 100 acres mentioned above. Deeds were executed accordingly and approved by the court. The partition agreement was in writing and provided, *inter alia,* as follows:

"It is further agreed by and between the parties hereto that the Trusteeship which now exists under the jurisdiction of the Chancery Court of Cross County, Arkansas, and under which Mrs. J. Frank Twist and Ira F. Twist are Trustees, shall remain in force as long as necessary but not longer than December 31st, 1951, the

purpose of continuing such Trusteeship in existence being to perform agreements provided for herein, collect rents, pay taxes and to finish all obligations that said Trusteeship entered into under now existing rent contracts; provided, however, that should the Brawley-Spicer lease fall through or be terminated or breached, then the said Trusteeship shall be terminated as well as all of the obligations thereunder, and the interested owners of their respective properties under the division herein provided for will accept full separate responsibility for the proper performance of the other contracts as applied in their particular lands covered in the other Trusteeship contracts.''

In 1950 Brawley and Spicer formed a partnership with Dickey, and they continued doing business as the St. Francis Planting Company. They knew of the division of the Twist lands and that their lease, which expired in 1951, would not be renewed. In cultivating the Twist lands, they used their own farming equipment which was valued in excess of $100,000. They attempted to enter into an agreement with John Twist, of the J. Frank Twist family, whereby his family would join with the St. Francis Planting Company for the cultivation in 1951 of the property which had been deeded to the members of that family. This was to be done on the basis of the proposed partnership paying the same rent for the lands that the St. Francis Planting Company had agreed to pay. Also, the J. Frank Twist family was to purchase from the planting company a considerable portion of the farming equipment used in the cultivation of such lands.

Ira Twist, of the C. C. Twist family, and one of the trustees was approached with the same proposition, and whereas John Twist, the son of Mrs. J. Frank Twist, the other trustee, refused to accept it, Ira Twist and his family wanted to do so. But John Twist and his family strenuously objected to Ira Twist entering into an agreement with the St. Francis Planting Company for the cultivation in 1951 of even the lands that had been deeded to the C. C. Twist family; and John Twist threatened to sue Ira Twist, in the event that he

514

should enter into such an arrangement. Therefore, Ira Twist, since he was one of the trustees, withdrew from any negotiations in connection with the proposition of joining with the St. Francis Planting Company. Other members of the Ira Twist family did join with the planting company in the cultivation in 1951 of those lands belonging to the C. C. Twist family. The new partnership was called the Delta Farms Company, and it paid the old partnership, the St. Francis Planting Company, $140,000 for farming equipment.

It is contended by the J. Frank Twist family that there had been a large increase in the rental value of the farm lands between the year 1946, when the property was leased to the St. Francis Planting Company, and the year 1950, when that company rented the lands to the Delta Farms Company; that Ira Twist is a member of the partnership of the Delta Farms Company, and that since he was still co-trustee for all the Twist lands, he is liable for the increased rental value. However, the chancellor did not find that Ira Twist had any connection with the Delta Farm Company, and the finding of the court in this respect is sustained by the evidence.

In June, 1951, the C. C. Twist family sold their interest in the 100 acres, on which the headquarters was located, to the J. Frank Twist family. Among other things, the deed provides: "It is understood that this deed is subject to the lease outstanding in favor of St. Francis Planting Company and its sub-lessees, and that the grantees are not entitled to possession under this deed until December 31, 1951." The grantees were not required to pay for the land until the expiration of the lease mentioned in the deed. The 100 acres involved were under lease to the St. Francis Planting Company as part of the approximate 8,800 acres that had been leased to that partnership in 1946, on the same rental basis as all the other land involved in the lease. But appellants claim that the 100 acres should be considered on a different basis than other lands and that, since they acquired the ownership of the property in June, 1951, they are entitled to the entire rent of the 100 acres

for the year 1951. We do not agree with appellants' contention. The J. Frank Twist family knew at the time they purchased the interest of the C. C. Twist family that the property was under lease to the St. Francis Planting Company for the year 1951; and they also knew that the interest of the C. C. Twist family was sold for the purpose of completely effectuating a division of the entire property between the two families. All the other real estate had been previously divided, with the exception of the 100 acres, which were included in the lease to the St. Francis Planting Company at a stipulated sum, along with the other acreage. When that company paid its rent for the year 1951, it necessarily paid all the rent due on the 100 acres, and the J. Frank Twist family was only entitled to its proportionate share, as held by the chancellor.

In dissolving the trust, the chancellor allowed Ira Twist $15 a month for a period of three years, a total of $540, for his services in connection with keeping the books of the trust estate. Appellants contend that under the authority of *Imboden* v. *Hunter,* 23 Ark. 622, a trustee who has an interest in the trust cannot collect a fee for administering same, where there has been no previous agreement or order providing for such fee. Regardless of the applicability of the cited case, we do not think that it was anticipated by either side that Ira Twist would be paid anything for his services in connection with the bookkeeping. He collected the rents and distributed the money in an obviously satisfactory manner. In fact, it is suggested that for the duration of the trust he collected and distributed over a million dollars, and if he is entitled to any fee at all, it would seem that it should be for an amount many times the $540 allowed; but he made no claim for any kind of a fee and did not intimate that he was entitled to one until the closing days of the trust, and it appears that his request then was somewhat of an afterthought.

Appellees contend the court erred in not assessing the entire cost of the trusteeship against appellants but took no cross appeal from the court's decree in that re-

spect. We have concluded that the decree of the court should be affirmed in all respects, except the allowance of the $540 fee to Ira Twist, and that the entire cost of this appeal should be assessed against the appellants. It is so ordered.

ED. F. McFADDIN, Justice (concurring). I concur with the result reached in this case, but I reach such result by a process of reasoning entirely different from that contained in the majority opinion.

It is my view: (a) that Ira Twist was the trustee for the C. C. Twist family; (b) that Mrs. J. Frank Twist was trustee for the J. Frank Twist family; and (c) that the two families dealt at arm's length. My conclusion is that Ira Twist was not a trustee for the J. Frank Twist family, and, therefore, could not have violated any trust obligations to the J. Frank Twist family, since he was not a trustee for that family.

The present case is the second appearance in this Court of litigation involving the original partnership of J. F. Twist and Clarence C. Twist. See *Twist* v. *Gray*, 201 Ark. 812, 147 S. W. 2d 29. In that case, it was shown that following the death of Clarence C. Twist, A. L. Gray was appointed receiver of the Twist properties; and the litigation involved the compensation of the trustee.

In the course of that litigation, it was agreed that the control of all the Twist properties would be placed in J. F. Twist and Ira Twist "as co-trustees." When J. F. Twist died, his widow, Mrs. J. Frank Twist, became the trustee for the J. Frank Twist family. When the two trustees were unable to reach an agreement, then the Chancery Court settled the differences and made an order.

Thus through the years, Ira Twist represented the C. C. Twist family, and Mrs. J. Frank Twist represented the J. Frank Twist family. They acted as representatives of their respective families, which dealt at arm's length. I cannot see where either represented the opposite family.

In the light of the foregoing, it is clear that the decree in this case is correct. Certainly Ira Twist's com-

pensation should not be charged against the J. Frank Twist family.